UNITED STATES OF AMERICA,

       Plaintiff,

                                   CASE No. 1:09-cr-84

v.

                                   HON. ROBERT J. JONKER

EDDRICK MAREICUS LOGAN,

       Defendant.

_____/

## OPINION REGARDING DEFENDANT LOGAN'S FIRST STEP ACT MOTION

### INTRODUCTION

Defendant Logan pleaded guilty to a Section 841(b)(1)(B) crack cocaine offense in July 2009. The conviction exposed Defendant to a mandatory minimum sentence of five years in prison and a maximum of forty years. Defendant was sentenced as a career offender in October 2009 to a total term of 188 months imprisonment. He was twenty-nine years old at the time.

The matter before the Court is Defendant Logan's motion for modification or reduction in sentence under the newly enacted First Step Act, which provides for the retroactive application of certain sentencing reforms contained in the 2010 Fair Sentencing Act. (ECF No. 37 & 39).[1] The Court appointed counsel to assist Defendant Logan with his First Step motion. Both sides have filed briefs. The government responds that Defendant Logan is eligible for a reduced sentence,

---

[1] Defendant filed two motions. The first motion is submitted on the Court's form for motions brought under Guideline Amendment 750. Within the motion, however, Defendant mentions "Section 404" which the Court construes to be referring to Section 404 of the First Step Act. The Guideline analysis the Court sets out below incorporates Guideline Amendment 750 in any event.

but it contends that no significant reduction is warranted here.  (ECF No. 43).  Defendant asks for a reduction to 151 months, the bottom end of the revised guideline range.  (ECF No. 44).

The Court finds that Defendant Logan is eligible for relief under the First Step Act, but that he is not entitled to a plenary resentencing.  Nor does the Court see any other need for a hearing on the fully briefed issues.  The Court can and does exercise its discretion under the First Step Act to relieve Defendant Logan of the mandatory-minimum sentence originally applicable to his crack cocaine offense, and to reduce Defendant Logan's sentence to 168 months as provided in this Opinion and corresponding Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### *1. Defendant Logan's Charge & Plea*

In August 2008, officers with the Kalamazoo Valley Enforcement Team ("KVET") were investigating a large-scale drug-trafficking organization operating in the South Haven and Covert, Michigan areas.  As part of that investigation, officers suspected that Anthony Smith was a drug dealer and was a purchaser of large quantities of narcotics.  On August 14, 2008, KVET officers performed a traffic stop of Mr. Smith's vehicle while he was en route to Kalamazoo, Michigan.  The vehicle was being driven by Defendant Logan.  Officers found approximately 14 grams of crack cocaine on Mr. Logan's person, and a small amount of marijuana on the floor near where Mr. Smith was sitting.  The vehicle was impounded, and approximately ½ kilogram of heroin was found in a hidden compartment under the vehicle.  Mr. Smith later told investigators that he traveled with Defendant Logan on three or four occasions on which Defendant Logan purchased 10 ounces of heroin from another individual.

Defendant Logan was charged in a three count Indictment on March 19, 2009.  Count One charged him with conspiracy to distribute and possess with intent to distribution 100 grams or

more of heroin in violation of 21 U.S.C. §§ 846; 841(a)(1); and 841(b)(1)(B)(i). Count Two charged Defendant with aiding and abetting Mr. Smith's possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(i), and 18 U.S.C. § 2. Finally, Count Three charged Defendant with possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(iii). (ECF No. 1).

On July 14, 2009, Defendant pleaded guilty to Count Three of the Indictment before the Honorable Robert Holmes Bell (ECF No. 15). There was no written plea agreement, but the government agreed on the record during the plea to dismiss Counts One and Two at sentencing. (ECF No. 26, PageID.67). During the plea colloquy, Defendant Logan admitted to possession of approximately 13 grams of crack cocaine as part of the distribution offense. (ECF No. 26, PageID.74).

### 2. PSR & Sentencing

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Logan was responsible for 1,623.58 kilograms of marijuana equivalent which was based on the heroin seized from Mr. Smith's vehicle, the crack cocaine found on Defendant's person, and based on Mr. Smith's subsequent statement to law enforcement. (PSR ¶ 26). The quantity, in turn, triggered an initial base offense level of 32.

After adjusting downward for acceptance of responsibility, Defendant's offense level would have been 29. The PSR determined, however, that Defendant Logan qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions for a crime of violence and a controlled substance offense. (PSR ¶ 45). Since the statutory maximum penalty for the offense of conviction was forty years under Section 841(b)(1)(B)(iii), the guidelines called for a career offender offense level of 31, after adjusting for

acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(B) (2008). Level 31 being higher than the offense level calculated under Section 2D1.1, the career offender offense level took precedence and became Defendant Logan's total offense level. (PSR ¶ 46).

The officer then scored Defendant's criminal history at thirteen points, resulting in a criminal history category of VI.[2] (PSR ¶ 58). The guideline range for the drug offense, based on a total offense level of 31 and criminal history category of VI was 188 to 235 months on the chart. (PSR ¶ 92).[3] On October 19, 2010, Judge Bell sentenced Defendant Logan to 188 months imprisonment, the bottom end of the career offender guideline range.[4] (ECF No. 23). The sentence was to run consecutive to Defendant's term of imprisonment for three convictions in State court. (ECF No. 23). Applying the Section 3553(a) factors, the Court concluded the sentence "best reflects the circumstances because of the high risk of recidivism[.]" (ECF No. 27, PageID.105). The Sixth Circuit Court of Appeals subsequently affirmed Defendant's sentence. *United States v. Logan*, No. 09-2368 (6th Cir. Aug. 26, 2011).

### 3. The Fair Sentencing Act of 2010

In the summer of 2010 Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger

---

[2] Because Defendant Logan qualified as a career offender, his criminal history was also required to be VI. *See* U.S.S.G. § 4B1.1(b) (2008). (PSR ¶ 59).

[3] Without the career offender status, Defendant Logan's Section 2D1.1 offense level of 29 and criminal history category of VI would have resulted in a guideline range on the chart of 151 to 188 months.

[4] Apart from the career offender designation, Judge Bell found that Defendant's criminal history was still category VI, but the offense level would have been 27, for a range of 130-162 months. This was based on Judge Bell's conclusion that Defendant was responsible for the crack cocaine and heroin found during the August 14th traffic stop, but that he was not responsible for the 30 ounces of heroin that Mr. Smith reported he had purchased.

the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Today, therefore, in order to trigger the 5 year to 40 year sentencing range of Section 841(b)(1)(B)(iii) that Defendant Logan was convicted under, the offense must involve more than 28 grams of crack cocaine.

Those changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[5] Because Defendant Logan had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

### 4. The First Step Act of 2018

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

---

[5] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Logan was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the reviewing court's discretion. *Id.* at § 404(c). No reduction is required.

**DISCUSSION**

### 1. *Summary of the Court's Process*

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F. Supp. 3d 646 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status. Based on the Court's approach in *Boulding*, this question does not affect the categorical eligibility determination. It simply informs the Court's discretionary call at the second step.

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.*; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act

permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653.

This means, among other things, that career offenders like Defendant Logan who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

### 2. *Defendant Logan is Eligible for a Reduced Sentence.*

At the first step, the Court concludes Defendant Logan is eligible for consideration of a reduced sentence under the First Step Act. Indeed, the parties do not argue otherwise. Defendant Logan's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense."

The categorical limitations in Section 404(c) also do not apply to Defendant Logan. His sentence was not "previously imposed or previously reduced in accordance" with the Fair

Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

### 3. Scope of Relief

#### a. Guideline Comparison

At the second step the Court considers the scope of relief available to Defendant and then proceeds to determine by how much, if any, it should reduce Defendant Logan's sentence. The Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Defendant's crack cocaine conviction in Count 3 as it existed when Defendant Logan was originally sentenced in 2009 (taking into account Judge Bell's determination with respect to quantity) and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act.

| Count Three | Original Guidelines | Current Guidelines |
|---|---|---|
| **Base Offense Level**<br><br>*497.48 G Heroin*<br>*13.78 G Crack Cocaine* | Level 30 (§ 2D1.1(c)(5) (2008)<br><br>*773.08 kilograms of marijuana equivalent* | Level 26 (§ 2D1.1(c)(7))<br><br>*546.688 kilograms converted drug weight* |
| **Adjustments for Acceptance of Responsibility** | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| **Total Drug Offense Level (After Acceptance)** | Level 27 | Level 23 |
| **Statutory Penalty** | 5 years to 40 years<br>*Section 841(b)(1)(A)(iii)* | 0 to 20 years<br>*Section 841(b)(1)(C)* |
| **Chapter Four Enhancement (After Acceptance)** | Level 31 (§ 4B1.1(b))<br><br>*Maximum 40-year Penalty* | Level 29 (§ 4B1.1(b)(3))<br><br>*Maximum 20-year penalty* |

| Total Offense Level | Level 31 _Based on Career Offender Status_ | Level 29 _Based on Career Offender Status_ |
|---|---|---|
| **Criminal History Category Before Chapter 4** | Category VI 13 Criminal History Points | Category VI[6] |
| **Criminal History Category After Chapter 4** | Category VI (§ 4B1.1(b)) | Category VI |
| **Guideline Range Before Consideration of Career Offender Status** | 130 to 162 (LO 27; CH VI) | 92 to 115 (LO 23, CH VI) |
| **Guideline Range After Consideration of Career Offender Status** | 188 to 235 months (LO 31; CH VI) | 151 to 188 months (LO 29; CH VI) |

The parties agree that the statutory penalty provision applicable to Defendant Logan has changed because the amount of crack cocaine involved in the offense—approximately 13.78 grams of crack cocaine—is less than the 28 grams of crack cocaine now necessary to trigger those penalties.[7] The parties further agree that the new career offender range is 151 to 188 months. Beyond that, the parties disagree on what relief the Court should actually grant. The government says there is no basis for any significant reduction in light of the recidivist risk factors in play, and

---

[6] It is not clear whether, today, Defendant would score at 13 criminal history points since one point was added for recency under § 4A1.1(e). The guidelines no longer score this recency point. Neither side has requested the Court reexamine Defendant's criminal history score, or career offender status. And as the Court has previously remarked, the First Step Act does not provide for a plenary resentencing. The Court does not find it essential to resolve the question here because the guideline recalculation is simply one factor in the Court's consideration and not a controlling one.

[7] Elsewhere, this Court has rejected the government's argument that a defendant is ineligible for relief if the record, including judge found facts, contains an amount sufficient to trigger the original penalty provisions. The Court need not probe any further into the issue here because the amount in this case is not sufficient to trigger the original penalty provisions under both the quantity charged in the Indictment and the quantity found in the PSR that was attributable to Defendant Logan.

the history of the case.  The defense says a reduction to at least the low end of the new career offender range is in order.

### b. *Discretionary Decision in this Case*

After its review of the record, including Defendant Logan's post-sentencing behavior, the Court elects to exercise its discretion to provide a reduction to Defendant Logan's sentence to 168 months of custody.  In evaluating the extent of the reduction, the Court considers the guideline analysis, the factors set forth in § 3553(a), the time Defendant Logan has already served, and the nature of the original offense conduct.  The Court also considers Defendant's record in the BOP.  The guideline analysis augers in favor of some reduction.  The spread between the drug offense level and the career offense guideline has grown.  The seriousness of the underlying offense, the criminal history, and other recidivist risks weigh against too deep a reduction.  Defendant also has a mixed record from the BOP.  Despite some work and educational achievement, Defendant Logan has had disciplinary trouble in BOP custody, including a February 2018 fight with another inmate.  Considering and balancing all these factors, the Court determines to reduce Defendant Logan's sentence with respect to Count Three to 168 months imprisonment.  All other terms of the original sentence remain unchanged.

According to the Bureau of Prisons' website, Defendant is currently scheduled to be released on October 10, 2023.  It appears to the Court that Defendant will still have time yet to serve in custody even under the reduced sentence the Court is ordering today.  However, given the general availability of good behavior credits, and out of an abundance of caution, the Court rules that the reduced sentence will be for no less than time served.  *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at \*3-\*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for

deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements, if necessary.

## CONCLUSION

Defendant Logan's motions for modification or reduction of sentence under the First Step Act (ECF Nos. 37 & 39) are granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of 168 months imprisonment, but not less than time served. All other terms of the original sentence, including the five years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:  __October 8, 2019__          /s/ Robert J. Jonker_____
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE